JULIA M. DAY & another *vs.* PATRICK DOLAN.
PATRICK DOLAN *vs.* JENNIE M. DAY & another.

Hampden.   October 20, 1899. — November 28, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Fence — Validity of Proceedings of Fence Viewers — Officer de facto — Instructions — Evidence.*

It is no objection to the validity of a notice of a hearing to take action upon matters relating to a partition fence that it is given to the parties by one of the fence viewers, and the fact that he describes himself as a deputy sheriff does not make him any the less a fence viewer.

In an action, under Pub. Sts. c. 36, § 4, to recover double the value of a partition fence built by the plaintiff after the defendant's neglect to build it, although no record of the appointment as fence viewers of the persons who acted as such is put in evidence, if the defendant was present personally or represented at the hearings and was duly notified of all the proceedings in the matter and never challenged their authority thus to act, the jury are justified in finding that they were fence viewers *de facto* at least.

The proceedings in this case, which was an action under Pub. Sts. c. 36, § 4, to recover double the value of a partition fence built by the plaintiff after the defendant's neglect to build it, were authorized by §§ 5, 14, and it was not necessary to act under § 3.

It is immaterial that the notices relating to action upon a partition fence given by fence viewers to the parties were prepared by the attorney of one of the parties.

The fact that a surveyor employed to run the line by fence viewers in assigning the erection and maintenance of a partition fence was known by them formerly to have been in the employ of one of the parties and to have run the line previously, does not of itself necessarily show partiality on the part of the fence viewers, but it may be taken into account in considering that question.

Evidence as to the number of engineers living in a city, the fence viewers of which, in assigning the erection and maintenance of a partition fence, have employed an engineer living in another city to run the division line, is properly rejected as too remote, in an action under Pub. Sts. c. 36, § 4, to recover double the value of the fence built by one of the parties after the other's neglect to build it.

In an action, under Pub. Sts. c. 36, § 4, to recover double the value of a partition fence built by the plaintiff after the defendant's neglect to build it, the defendant excepted to the admission of the following evidence : 1. The question to one of the persons who acted as fence viewers in assigning the erection and maintenance of the fence, and who could not identify the signature to the certificate of the other, who was dead, " Whether or not he acted as fence viewer in this matter with you ? " 2. The question, " How did you get the different stations of this line of fence ? " 3. The question, " When you went there to appraise the fence . . . how did you find the fence in reference to stakes that had been set by the surveyors ? " 4. The demand by the plaintiff upon the defendant for payment of double the value of the fence as determined by the fence viewers. 5. The petition by the plaintiff to the fence viewers to view the fence built by him. *Held,* that no error appeared.

The certificates of persons signing themselves as fence viewers, showing their proceedings in assigning the erection and maintenance of a partition fence and in adjudging the sufficiency of the fence erected by one of the parties after the other's neglect to do so, and in determining the value thereof, although no record of their appointment as fence viewers is put in, are admissible in evidence as the acts of *de facto* officers, in an action under Pub. Sts. c. 36, § 4, to recover double the value of the fence.

In an action for trespass against a person who had built a partition fence after the plaintiff's neglect to build it in accordance with an assignment by fence viewers, the answer to which set up the statute of limitations, it appeared· that it had been adjudicated that the true line was not the line which was established by the fence viewers. The judge instructed the jury that if they found that whatever trespass was committed occurred more than six years before the action was brought, the plaintiff could not recover ; that if the acts were done within six years, the defendant would be liable for the damage suffered ; and that if the defendant did not set the fence on the line designated by the fence viewers, his

act would be a trespass, if done within the six years, but if he set the fence on such line, there was no trespass, because he had a right to do it under the statute. *Held*, that the plaintiff had no ground of exception.

THE FIRST CASE was an action of contract under Pub. Sts. c. 36, § 4, to recover double the value of a partition fence between land of the parties in Holyoke built by the plaintiffs after the defendant's neglect to build the same.

THE SECOND CASE was an action of tort for trespass on the plaintiff's land. Writ dated June 14, 1897. The answer in this case set up, among other defences, the statute of limitations. The cases were tried together in the Superior Court, before *Maynard*, J., who allowed a bill of exceptions, in substance as follows.

It was agreed that the parties to these actions were owners of adjoining farms; that an ancient division fence had once existed between the premises, and a portion of it was still standing at the time when the controversy concerning the boundary line arose; and that Dolan contended that the fence represented the true boundary line, while the Days contended that the boundary line was located about twenty-nine feet from the fence and upon Dolan's land at the easterly end of the line. There was evidence tending to show that the surveyor, one Davis, who laid out the line upon which the fence viewers ordered the fence built, had been previously employed by the Days to survey the line, and had surveyed it for them, and had placed stakes in the ground to indicate it, and that the fence was afterward erected on the line so laid out; but Davis denied that he was ever on the premises before the time when he made his survey accompanied by the alleged fence viewers.

It was agreed that Mr. Dwight, who was acting as counsel for the Days in the matter before the fence viewers, drew up all the papers for the fence viewers, and that the latter signed them; and that Mr. Dwight also wrote the copies which were served upon the parties. It was judicially determined after the action by the alleged fence viewers and before the trial of these cases, that the line as established by the fence viewers was not the true line, and that the true line was located on the line of the old fence, above mentioned.

For the purpose of determining the questions herein involved,

it is agreed that there was evidence tending to show that if the fence which the fence viewers put up was not erected in accordance with law, then there was a technical trespass in the second case.

Sumner T. Miller, called as a witness by the plaintiffs, was shown a certificate, dated October 26, 1889, and signed by him and by John Bateson, "Fence Viewers of Holyoke," and identified his own signature, and also testified that Bateson was dead; and that he had no doubt it was his signature, but that he was not familiar with his handwriting. He was then asked the following question: "Whether or not he acted as fence viewer in this matter with you?" and answered "He did." This was objected to, but was admitted; and Dolan excepted.

The certificate was then admitted in evidence, against the objection and exception of Dolan, and was as follows:

"Upon the petition of Julia M. Day and Jennie M. Day, both of West Springfield, in the County of Hampden and Commonwealth of Massachusetts, dated Sept. 17th, A. D., 1889, stating that a controversy had arisen between them and Patrick Dolan of Holyoke, in said County, concerning the rights of themselves and said Dolan in a partition fence between certain real estate belonging to the petitioners and certain real estate of said Dolan, which real estate was situated in said Holyoke, and concerning the obligation of the petitioners and said Dolan to maintain said fence, we gave the petitioners and said Dolan due notice that we would meet at the house of said Dolan on Friday, Sept. 20th, 1889, at one o'clock P. M., to hear and act upon the said petition. We met at the time and place appointed and the petitioners appeared by counsel and the said Patrick Dolan in person. After hearing the parties and viewing the premises we determined that a partition fence is required between the land of the petitioners and that of said Patrick Dolan. We found that the division line between the petitioners' land and that of said Dolan is in dispute and found it necessary to employ a survey to run such line, and according to the survey then and there made by them under our direction, we designate the following as the boundary line between the land of the petitioners and of said Patrick Dolan, viz. . . .

"We assign to the petitioners as their share of the fence to be

erected and maintained upon said boundary line, the westerly
half of the first course above stated and the whole of the second
course and the first ten rods and 17¾ links of the third course ;
and we assign to the said Patrick Dolan as his share of the fence
to be erected and maintained upon said boundary the remaining
part of the distance so as aforesaid surveyed. The terminations
of the extent of fence to be erected and maintained by the peti-
tioners are designated as the first and third courses by stakes
driven into the ground.

" We direct that the petitioners and Patrick Dolan shall erect
their respective shares of said fence within fifteen days from the
date of this assignment.

" We have taxed the fees and cost of said view as follows,
viz. : . . . and we determine that one-half of such fees and costs
shall be paid by the petitioners and one-half by said Dolan."
This was certified by the city clerk to have been recorded in his
office on October 27, 1889.

The witness was shown another certificate dated December
10, 1889, and signed in the same manner as the first one, and
after he had testified regarding the signatures as before, the
certificate was admitted in evidence, against the objection and
exception of Dolan, and was as follows :

" The undersigned fence viewers of Holyoke in said County,
upon petition of Julia M. Day and Jennie M. Day, both of
West Springfield, in said County, and after due notice to the
petitioners and to Patrick Dolan, of said Holyoke, met pursuant
to said notice at the house of said Dolan on Dec. 7th, A. D.,
1889, at two o'clock P. M., to view and approve that portion of
the fence upon the boundary line between the lands of the peti-
tioners and said Dolan, in said Holyoke, which we had hereto-
fore ordered said Dolan to erect or repair, and which, upon the
neglect of said Dolan to comply with our order, the petitioners
had erected. A portion of the fence so erected having been
torn down, we adjourned our view by public proclamation to the
same place on the 9th day of said December at three o'clock
P. M. At the said last mentioned time and place we met and
the petitioners and said Dolan were represented. After due
examination, finding the portion torn down had been rebuilt,
we adjudged the fence so as aforesaid built by the petitioners to

be sufficient and determined the value thereof is forty-two ($42) dollars."

The witness also identified a notice which was put in evidence, dated September 17, 1889, addressed to the several parties, signed in the same manner as the two certificates, and reading as follows : " You are hereby notified that on Friday, the 20th day of September, A. D., 1889, at one o'clock P. M., we will meet at the house of the said Patrick Dolan to hear and act upon the petition of the said Julia M. and Jennie M. Day in relation to the partition fence between the land of said Julia M. and Jennie M. Day and the land of said Patrick Dolan." Upon which was the following " officer's return : Hampden, ss. September 18, 1889. By virtue of this notice I this day gave the within named Jennie M. Day and Patrick Dolan, each in hand, a true and attested copy of this notice," signed by " S. T. Miller, Dep. Sheriff."

The witness testified further that as to the notice given by the fence viewers to Dolan, he thought that he gave Dolan a copy of the last certificate ; and that the fence that he surveyed according to this last certificate was on the line of survey made by Davis.

He was then asked the following question : " How did you get the different stations of this line of fence ? " This question was objected to, but was admitted, and Dolan excepted. The witness answered : " By indications of the engineer. The engineer indicated the different stations according to the line given in this certificate by stakes, as I remember it." The witness was also asked the following question : " When you went there to appraise the fence erected by the Misses Day instead of Dolan, how did you find the fence in reference to stakes that had been set by the surveyors ? " This question was objected to, but was admitted, and Dolan excepted. The witness answered : " As I remember it, it was on the line laid down by the engineer. I established the line as laid down by the engineer."

On cross-examination, the witness testified, among other things, as follows : " I don't think I hired Mr. Davis to run the line ; I don't remember that part of it that Mr. Dwight had Mr. Davis run that line before and the stakes were right down there at the time I went down there to have my view ; I knew that Mr.

Davis was acting in the capacity of an engineer there; I don't remember whether I received that information from Mr. Dwight; quite likely that information came from Mr. Dwight, but I am not able to state positively; I don't think I knew, and I don't recollect it if I did know, that Mr. Davis had previously been there and made a survey; I did not 'know when I got on the premises that Mr. Dolan objected very strenuously to having Mr. Davis run that line; Mr. Davis lives in Northampton."

The defendant Dolan offered to show that there were three or four engineers living in Holyoke who could have been procured to run this line. This evidence was objected to and excluded, and Dolan excepted.

It was agreed that Mr. Dwight would testify, if competent, that he delivered a written demand to Dolan. The admission of this paper was objected to by Dolan, but it was admitted; and he excepted. The paper, which was dated December 13, 1889, addressed to the defendant, and signed by the plaintiffs, was as follows: " Messrs. Miller and Bateson, Fence Viewers of Holyoke, having by certificate under their hands ascertained the value of the fence which we have built where you neglected to build one according to their previous order at forty-two dollars and their fees at four dollars, we do hereby demand of you payment of double the sum so ascertained."

A copy of a notice, dated December 5, 1889, addressed to the parties, and signed and served in the same manner as that of September 17, was put in evidence, and was as follows: " You are hereby notified that we will meet at the house of 'said Dolan on the 7th day of December, current, at two o'clock P. M., to view the fence made by the said Julia M. and Jennie M. Day upon that part of the boundary line between their land and land of said Dolan, upon which we have heretofore ordered said Dolan to build a fence, said Dolan having neglected to build such fence, and to take action in relation thereto as may be proper."

Miller, recalled, testified that he had seen a petition to view the fence after erection, which petition was then offered in evidence, and was admitted against the objection and exception of Dolan. This petition was dated December 4, 1889, addressed to Miller and Bateson as fence viewers, and was as follows: " Re-

spectfully represents Julia M. Day, of West Springfield, Mass., that Patrick Dolan, of said Holyoke, has not built up or repaired the fence between his land and land of your petitioner and her sister, Jennie M. Day, as directed by you, and that your petitioner and the said Jennie M. Day have made and repaired the same. Wherefore I petition you to view the fence which we have so made and repaired, and to take such action in relation thereto as may be proper according to law. Julia M. Day."

At the close of the evidence the defendant Dolan requested the judge to give the following rulings in the first case : " 1. On the pleadings and the evidence in the case the verdict should be for the defendant. 3. There was no sufficient complaint or application made to two or more fence viewers to authorize them to proceed under Pub. Sts. c. 36, § 5. 4. No sufficient notice was given to the defendant by the fence viewers before the time of their making a survey of the partition fence to determine whether it was insufficient. 5. No sufficient notice was given to the defendant by the fence viewers prior to the time of their making the assignment in writing specified in Pub. Sts. c. 36, § 5. 6. The fence viewers did not in writing assign to the defendant his share of the fence which he was to maintain as required by Pub. Sts. c. 36, § 5. 7. No sufficient complaint or application to the fence viewers to authorize them to do the things which they afterwards undertook to do was ever made by the Misses Day. 8. The notice dated September 17, 1889, is insufficient and improper. 9. No sufficient service of the notice mentioned in the preceding request was ever made upon the defendant. 10. There was no adjudication by the fence viewers that the partition fence was insufficient, and the plaintiffs are not entitled to recover. 11. The alleged assignment dated October 26, 1889, is insufficient and illegal, and the plaintiffs are not entitled to recover. 12. The petition dated December 4, 1889, is insufficient and illegal, and the plaintiffs are not entitled to recover. 13. The notice dated December 5, 1889, is insufficient and illegal, and the plaintiffs are not entitled to recover. 14. The alleged service of notice mentioned in the preceding request is insufficient and illegal, and the plaintiffs are therefore not entitled to recover. 15. The certificate dated December 10, 1889, is insufficient and illegal, and the plaintiffs are therefore

not entitled to recover. 16. No sufficient notice was given to the defendant of the adjournment of the hearing before the fence viewers from December 7, 1889, to December 9, 1889. 17. No sufficient notice was given to the defendant that the fence viewers had made the certificate dated December 10, 1889, and the plaintiffs are therefore not entitled to recover. 18. The alleged demand dated December 13, 1889, is insufficient and illegal, and the plaintiffs are not entitled to recover. 19. If the drawing of the notice dated September 17, 1889, and of the assignment dated October 26, 1889, and of the notice dated December 5, 1889, and of the certificate dated December 10, 1889, for the fence viewers by the attorney for the plaintiffs, was a partial and illegal act on the part of the fence viewers, then the plaintiffs are not entitled to recover. 20. The act of the fence viewers in placing the new fence upon a line run by the engineer of the plaintiffs in this case was such a partial and illegal act that the plaintiffs are not entitled to recover. 21. If the surveyor employed by the fence viewers was employed at the suggestion or direction of their attorney, the plaintiffs cannot recover. 22. If the fence viewers knew that the surveyor employed by them in this case had been previously employed by the plaintiffs or their attorney to determine the line in question, then the plaintiffs cannot recover. 23. If the surveyor employed by the fence viewers to determine the line relied upon a previous survey made by himself to determine said line, then the plaintiffs cannot recover. 24. If the fence viewers had reason to believe that the surveyor employed by them had previous to such employment made a survey to determine the disputed line under the direction of the plaintiffs or their attorney, then the plaintiffs cannot recover. 25. If the surveyor employed by the fence viewers to determine the line in dispute had previous to such employment made a survey for the purpose of finding such line, and the plaintiffs or their attorney knew the result of such survey, and that the fence viewers were to employ the surveyor for such purpose, then the plaintiffs cannot recover. 26. If any of the alleged notices or findings in the case were drawn up by the plaintiffs' attorney and signed by the fence viewers at his request, the plaintiffs cannot recover."

The judge refused to give these rulings; and Dolan excepted.

The judge instructed the jury, among other things, as follows: "Now, the defendant claims that the fence viewers were not impartial. Fence viewers and field drivers are quasi judicial officers. All persons who have to pass upon the rights of other parties are quasi judicial officers, and it is important that there should be the strictest impartiality. They should sit with unbiased mind, and declare the exact truth, as nearly as they can get at it, between the parties. The defendant claims that these fence viewers were not of that kind, and if they were not, if the evidence satisfies you that either of them was partial, their action would be void. The defendant claims that from the circumstances you ought to be satisfied that these fence viewers were not impartial. That is, he says that all these notices were prepared by Mr. Dwight. But, that being the fact, it does not follow that the fence viewers followed Mr. Dwight's instructions so far as laying out the premises and any work there was concerned. That is, giving a notice is not a decision of a case, it is only one of the preliminaries, and it makes no difference to the parties whether the fence viewers prepared the notice, or employed some one else to do it, so far as the writing and serving of the notice are concerned. Where partiality comes in, or is wrong, is in determining the merits of the case, not in preparing or giving the notice.

"The defendant claims further that you ought to be satisfied that they employed a surveyor, or that a surveyor ran the line, who was in the interest of the Misses Day. He claims that you ought to be satisfied upon the evidence that these fence viewers knew that the surveyor who was there, who laid it out, had been in the employ of the Misses Day, and therefore they ought not to have employed such a person. Now, it makes no difference who ran the line, provided it was run properly. But that is evidence for you to consider in coming to a conclusion whether or not there was any partiality shown on the part of these fence viewers. The mere fact that a certain person was employed, or a person ran the line for the fence viewers, who had run the line previously, of itself does not necessarily show partiality on the part of the fence viewers. It is one of the elements to be taken into account. And so with all other matters which have been offered in evidence here. If they

have satisfied you that these fence viewers were not impartial, that they were partial to the Misses Day, that they were working in their interest, then their award is of no account. But if, on the other hand, you do not find there was any partiality shown, that they were not working in the interest of either party, but they were working to determine the true line, and to determine what was the proper and the right thing, then, although there may be things which may look one way or the other, yet, so far as their work is concerned, it will stand.

" There has been no record put in that these men were appointed fence viewers, and the defendant claims that for that reason all this hearing is void. But it is not necessary that the office of fence viewer should be proved by a record. It is not necessary that there should be any record of their taking the oath. If a person is acting in an office like the office of a fence viewer or field driver, if he claims to be an officer of that kind, that is *prima facie* evidence that he is an officer *de facto*, not *de jure*. That is, his title to that office cannot be impeached in a collateral proceeding. So that if, upon the evidence, you should find that they were actual fence viewers, acting and holding themselves out as such, then you would be warranted in finding, so far as this case is concerned, that they were fence viewers.

" Then, passing that question, and the question whether they acted impartially in determining this line, if you should find that a demand was made in accordance with the law upon this party to pay the amount awarded as the value of the fence as estimated by them, and that he has neglected to pay it, and that he had neglected more than the time provided, before this suit was brought, then the plaintiffs would be entitled to recover double the amount which the fence viewers determined to be the value of the fence.

" Now, coming to the other suit, it has been agreed that after this was done, the question where the true line was, was tried in this court, and it was adjudicated that the true line was not the line that was established by the fence viewers. That does not make any difference with the first suit. And because of that Dolan has made what is called a writ of trespass, claiming that the Misses Day went on to his land and removed the fence,

after this was done. Now, in answer to that the defendants deny there was anything of that kind done, and say that suit was not brought within six years of the time of the transaction.

" If you find that whatever trespass was committed occurred more than six years before Dolan brought suit, then it is outlawed, and he cannot recover. If the acts alleged were done within six years, then for whatever damage was done, he would be entitled to recover.

" So far as moving the fence was concerned, if you find that the fence viewers acted impartially, so that it was properly done, the mere fact that the defendants removed the fence in accordance with the orders of the fence viewers would not make them liable. Dolan claims that the fence was not set exactly on the line of stakes that was fixed by the fence viewers, but on his side of those stakes. If the Misses Day, through their servants, set their fence on Dolan's land, they had no right to do so, and that would be a trespass. Of course, if it was more than six years ago, the same rule applies. But if they set their fence on the line designated by the fence viewers, there is no trespass, because they had a right to do it under the statute. The counsel for either party could not also be counsel for the fence viewers."

The jury returned a verdict for the plaintiffs in the first case, and for the defendants in the second case; and Dolan alleged exceptions.

*W. H. Brooks & W. Hamilton,* for Dolan.

*R. O. Dwight,* for the Days.

HAMMOND, J. In the absence of evidence to the contrary, it sufficiently appears from the certificate of the fence viewers that the plaintiffs in the first case had made an application to them under Pub. Sts. c. 36, § 5; that due notice of the time and place appointed for the hearing thereon was given ; that there was a hearing as appointed, in which both parties were represented, the plaintiffs by counsel and the defendant in person ; that the division line was in dispute; that under Pub. Sts. c. 36, § 14, the fence viewers proceeded by the aid of a surveyor to run the line, and, in accordance with the survey then and there made under their direction, designated a line which is described in their certificate; that they assigned to the parties their respective shares of the fence to be erected and maintained, which shares are particu-

larly described in the certificate ; that they directed the parties to erect their respective shares of the fence within fifteen days of October 26, 1889, the date of the assignment; and that they taxed the fees and costs of the view and directed that each party should pay one half thereof.

It further appears by the certificate of the city clerk that the certificate of the fence viewers was duly recorded in the office of the city clerk, October 27, 1889.

Dolan did not comply with the order to build his part of the fence ; the plaintiffs built it, and, in the absence of evidence to the contrary, it sufficiently appears from the second certificate of the fence viewers that the plaintiffs made application to them to have the part of the fence thus erected by the plaintiffs adjudged sufficient, and the value thereof ascertained by a certificate under the hand of the fence viewers; that due notice of the time and place appointed for the hearing thereon was given ; and at an adjournment of said meeting, of which due proclamation was made and at which both parties were represented, the fence viewers adjudged this part of the fence to be sufficient, and determined the value thereof to be forty-two dollars.

It further appears that thereafterwards, and before bringing this action, the plaintiffs duly demanded the same of the defendant.

Upon looking into the matters put in, we see no objection to them in form.   It is no objection to the validity of the notices that they were given to the parties by one of the fence viewers, and the fact that he describes himself as deputy sheriff does not make him any the less a fence viewer.

Although no record of their appointment as fence viewers was put in, yet they were acting as such, and although the defendant was personally present at the first hearing, was represented at the second hearing, and was duly notified of all the proceedings, he never seems to have challenged their authority thus to act; and under these circumstances the jury were justified in finding that they were fence viewers *de facto* at least.   The proceedings were authorized by Pub. Sts. c. 36, §§ 5 and 14, and it was not necessary to act under § 3.

Without herein specifically noting in detail the defendant's needlessly numerous requests for rulings based upon that part

of the defence which depends upon the alleged partiality of the fence viewers, the relation between them and the counsel for the plaintiffs, and the relation of the surveyor to the plaintiffs, it is sufficient to say that the instructions of the court as to these grounds of defence were sufficiently full and without error.

The evidence as to the number of engineers living in the city of Holyoke was properly rejected as too remote. We see no error in the other rulings upon the admission or rejection of evidence.

The certificates of the fence viewers were admissible as the acts of *de facto* officers.

As to the second case, we see no ground of objection to the charge of the court.

In each case the entry must be            *Exceptions overruled.*